**FOR PUBLICATION**

```
            IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                  DIVISION OF ST. THOMAS AND ST. JOHN


NORMAN COHLER, BARBARA COHLER,      )
MICHAEL COHLER, SHERRI ANAPOLLE     )
BONNIE STEINER, and MARCI ARKIN,    )
                                    )
             Plaintiffs,            )
                                    )
             v.                     )
                                    )   Civil No. 2005-29
UNITED STATES OF AMERICA, through   )
the NATIONAL PARK SERVICES, and     )
PARADISE AQUA TOURS, INC.,          )
                                    )
             Defendants.            )
                                    )
```

**ATTORNEYS:**

**K. Glenda Cameron, Esq.**
St. Croix, U.S.V.I.
    *For the plaintiffs,*

**Joycelyn Hewlett, AUSA**
St. Thomas, U.S.V.I.
    *For the United States of America,*

**Joshua Evan Tate, Esq.**
St. Croix, U.S.V.I.
    *For Paradise Aqua Tours, Inc.*


<u>**MEMORANDUM OPINION**</u>

**GÓMEZ, C.J.**

Before the Court is the motion of defendant United States of America ("the government") for summary judgment against plaintiffs Barbara Cohler, Michael Cohler, Sherri Anapolle,

*Cohler v. United States*
Civil No. 2005-29
Memorandum Opinion
Page 2

Bonnie Steiner, and Marci Arkin (the "Plaintiffs")[1]. For the reasons stated below, the Court will grant the motions.

## I. FACTS

This matter arises from an incident that occurred while Norman Cohler was swimming at Trunk Bay on St. John, U.S. Virgin Islands. Trunk Bay is a beach located in the Virgin Islands National Park.

On November 25, 2003, Norman Cohler ("Cohler") visited Trunk Bay with several family members (collectively, the "Cohlers").[2] The Cohlers had been vacationing on a cruise ship and took a day trip to the beach. While swimming there, Norman Cohler was struck by shore-breaking waves and injured.

Thereafter, Norman Cohler and his family members commenced this action against the government and Paradise Aqua Tours, Inc. The Fifth Amended Complaint (the "Complaint") alleges that the government owed the Plaintiffs an affirmative duty to exercise reasonable care to protect them from dangerous conditions at Trunk Bay that posed an unreasonable risk of harm. It further

---

[1] Because the government has not moved for summary judgment against Norman Cohler, the term "Plaintiffs," as used in this Opinion, does not include Norman Cohler.

[2] Some of Norman Cohler's relatives have different last names. However, for ease of discussion, the Court will refer to the plaintiffs collectively as the "Cohlers."

*Cohler v. United States*
Civil No. 2005-29
Memorandum Opinion
Page 3

alleges that the defendants failed to warn Norman Cohler and his family members of the dangerous conditions and failed to properly supervise and maintain the beach and swimming areas. Cohler seeks damages stemming from his injuries. His family members claim that they suffered severe emotional distress that caused physical injuries as a result of witnessing his accident.

The government now moves for summary judgment against the Plaintiffs on their claims for negligent infliction of emotional distress.

## II. DISCUSSION

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 ("Rule 56") if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3rd Cir. 1985). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party

*Cohler v. United States*
Civil No. 2005-29
Memorandum Opinion
Page 4

for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002).

### III. ANALYSIS

**A. Negligent Infliction of Emotional Distress**

The government argues that it is entitled to summary judgment on the Plaintiffs' claims for negligent infliction of emotional distress. It contends that there is no genuine issue of material fact as to whether the Plaintiffs suffered physical harm as a result of the accident, or were within the zone of danger at the time the accident occurred.

To prevail on a claim for negligent infliction of emotional distress based on witnessing an injury to a third person, a plaintiff must show that:

1. The defendant's negligence placed the plaintiff in danger for his own safety – in other words, the plaintiff was in the "zone of danger" when the accident occurred;

2. The plaintiff suffered bodily harm as a result of emotional disturbance; and

*Cohler v. United States*
Civil No. 2005-29
Memorandum Opinion
Page 5

>     3.   The plaintiff is a member of the injured third party's immediate family.

*See* Restatement (Second) of Torts §§ 436 (2)-(3), 436A (1965) ("Section 436" and "Section 436A," respectively);[3] *Mingolla v. Minn. Mining and Mfg. Co.*, 893 F. Supp. 499, 506 (D.V.I. 1995) ("In order for plaintiffs to recover for the tort of negligent infliction of emotional distress under [S]ection 436, the defendant's negligent conduct must have placed plaintiffs in

---

[3] Section 436 provides, in relevant part:

> (2) If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.
>
> (3) The rule stated in Subsection (2) applies where the bodily harm to the other results from his shock or fright at harm or peril to a member of his *immediate family* occurring in his presence.

Restatement (Second) of Torts § 436 (2)-(3) (1965)(emphasis added).

Section 436A provides:

> If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance.

Restatement (Second) of Torts § 436A (1965).

*Cohler v. United States*
Civil No. 2005-29
Memorandum Opinion
Page 6

danger for their own safety, and they must have suffered bodily harm as a result of their emotional disturbance."); *see also Anderson v. Gov't of the V.I.*, 180 F.R.D. 284 (1998) ("In order to recover on a claim of negligent infliction of emotional distress, not only must [the plaintiff] demonstrate that he suffered a physical injury as a result of the defendants' actions, but also that it was reasonably foreseeable that defendants' actions would result in [the plaintiff]'s injuries.")

### 1. The Zone of Danger Requirement

"[T]he zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 547-48, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994); *see also Gottshall v. Consolidated Rail Corp.,* 56 F.3d 530 (3d Cir. 1995). Indeed, in the Virgin Islands, "to sustain a claim of negligent infliction of emotional distress[,] [] the negligent conduct must have placed the plaintiff in danger of his or her own safety." *Int'l Islamic Community of Masjid Baytulkhaliq, Inc. v. United States*, 981 F. Supp. 352 (D.V.I. 1997); *see also Mingolla*, 893 F. Supp. at 506.

Here, the government has presented evidence showing that Barbara Cohler was sitting on a beach chair at the time of the

*Cohler v. United States*
Civil No. 2005-29
Memorandum Opinion
Page 7

accident. She did not go into the water at the time her husband was injured. In response to an interrogatory, Barbara Cohler stated:

> I sat in the beach chair Norman rented me. I did not go in the water. I did not go in the water. I just sat in the beach chair and watched the children playing and getting set up on the beach.

(Barbara Cohler Interrogs. ¶ 4, Oct. 17, 2005.) Mrs. Cohler further explained:

> I saw Norman go into the water . . . . Norman was about 10 feet from me. Then I saw a wave hit Norman on the back of his neck and knocked him down.

(*Id.* at ¶ 13.)

Similarly, Sherri Anapolle stated that she "did not go swimming in Trunk Bay on November 25, 2003." (Sherri Anapolle Interr. at ¶ 11, March 31, 2006.) It is undisputed that, at the time of the accident, Sherri Anapolle was on the beach:

> I walked back to put the camera away . . . . I then heard some commotion down by the water and I saw my brother . . . and my husband . . . running into the water to help bring someone in . . . . I watched as they pulled him in and laid him on the ground.
>
> . . .
>
> After my father was laid on the beach and other people were attending him, I gathered my kids . . . and we took the children to an area where there were picnic tables.

(*Id.* at ¶ 9-10.)

Additionally, it is undisputed that Bonnie Steiner did not go in the water on the date of Norman Cohler's accident. In a

*Cohler v. United States*
Civil No. 2005-29
Memorandum Opinion
Page 8

response to an interrogatory, she explained the events of

November 25, 2003:

> I noticed that all the kids had been in the water and apparently when I was renting the chair my father had gone in the water as well. Just a few minutes later I heard people screaming and realized that my father was unconscious and his body was being pulled out of the water.
> When they pulled him out of the water I grabbed my Mother and backed her away from the scene because it was too horrifying.

(Bonnie Steiner Interr. at ¶ 4, April 3, 2006.) Bonnie Steiner also stated that she was five to ten yards away from Norman Cohler when he was being pulled out of the water.

Neither Barbara Cohler, Sherri Anapolle, nor Bonnie Steiner has offered any evidence whatsoever to show that their safety was ever threatened as a result of the government's negligence. Barbara Cohler, Sherri Anapolle, and Bonnie Steiner have failed to demonstrate that they were in the "zone of danger" at the time of Norman Cohler's accident, as required to support a claim for negligent infliction of emotional distress. *See, e.g., Gottshall*, 56 F.3d at 535-36 (holding that the plaintiff was not in the "zone of danger" when he witnessed his friend die of a heart attack on an oppressively hot day because he did not face a threat of physical impact from the sun's rays and heated air, and was not placed in immediate risk of physical harm because the working conditions were not extraordinarily harmful); *Int'l Islamic Community of Masjid Baytulkhaliq, Inc.,* 981 F. Supp. at

370 (granting summary judgment in favor of the defendants, *inter alia*, because the "[p]laintiffs failed to show that their safety was in danger, apart from groundless allegations of an assassination conspiracy").[4]

### 2. Physical Harm

Throughout the Restatement (Second) of Torts, the term "physical harm" is defined as "the physical impairment of the human body, or of land or chattels." Restatement (Second) of Torts § 7(3) (1965);[5] *see also Walters v. Mintec/Int'l,* 758 F.2d

---

[4] Like Barbara Cohler, Sherri Anapolle, and Bonnie Steiner, the undisputed evidence shows that Michael Cohler was not in the water at the time his father was struck by the shore breaking wave. However, Michael Cohler presented evidence showing that he entered the water immediately after the accident and helped pull his father out of the water. Michael Cohler argues that, even if he was not in the "zone of danger" at the time of the accident, he entered the "zone of danger" when he went into the water to rescue his father and was subjected to shore breaking waves. Additionally, it is undisputed that Marci Arkin was in the water at Trunk Bay when the accident occurred. Therefore, Marci Arkin contends that she was in the "zone of danger" because her safety was placed in an immediate risk of danger by the same set of shore breaking waves that struck her father. However, the Court need not determine whether Michael Cohler or Marci Arkin were in the "zone of danger." Even assuming that an issue of fact exists as to whether Michael Cohler and Marci Arkin were in the "zone of danger," the Court finds, as discussed below, that such an issue would not be determinative of whether either Michael Cohler or Marci Arkin have made the requisite showings to support their claims for negligent infliction of emotional distress. *See* Section III. A. 2, *infra*.

[5] The word "harm" is defined in the Restatement (Second) of Torts to mean "the existence of loss or detriment in fact of any kind to a person resulting from any cause." Restatement (Second) of Torts § 7(2).

*Cohler v. United States*
Civil No. 2005-29
Memorandum Opinion
Page 10

73, 78 (3d Cir. 1985) (noting that "the term physical harm has a common meaning as used throughout the Restatement" (citation and quotations omitted)). The term "'physical harm' can encompass bodily injury brought about solely by the internal operation of emotional distress." *Walters,* 758 F.2d at 77. However, "the negligent actor is not liable when his conduct results in emotional disturbance alone, without the bodily harm or other compensable damages." *Id.* at § 436A cmt a. (1965); *see also Lempert v. Singer*, 26 V.I. 326, 766 F. Supp. 1356 (D.V.I. 1995) (holding that, absent any physical harm, a plaintiff cannot prevail on a claim for negligent infliction of emotional distress). To recover for "physical harm resulting from emotional disturbance" under Section 436, the plaintiff must show "bodily harm" other than "fright, shock, or other similar and immediate emotional disturbance." Restatement (Second) of Torts § 436(2) (1965).

"[T]he line between mere emotional disturbance and physical harm which results from emotional disturbance may be far from clear." *Walters,* 758 F.2d at 78. Comment c to Section 436A provides some guidance in determining whether emotional distress has produced physical manifestations:

> The fact that [emotional disturbance is] accompanied by transitory, non-recurring phenomena, harmless in themselves, such as dizziness, vomiting, and the like, does not make the actor liable where such phenomena are in themselves

*Cohler v. United States*
Civil No. 2005-29
Memorandum Opinion
Page 11

> inconsequential and do not amount to any substantial bodily harm. On the other hand, long continued nausea or headaches may amount to physical illness, which is bodily harm; and even long continued mental disturbance . . . may be classified by the courts as illness, notwithstanding their mental character.

Restatement (Second) of Torts § 436A, cmt. c (1965)

Here, it is undisputed that Michael Cohler "suffered shock, mental anguish, emotional distress, severe depression," as well as "anxiety and stress." (United States Interrogs. to Michael Cohler Resp. 14.); (CBI Interrogs. to Michael Cohler Resp. 14.)[6] However, evidence of shock, mental anguish, and depression is insufficient to show physical harm for purposes of negligent infliction of emotional distress under Virgin Islands law. *See, e.g., Ramos v. St. Croix Alumina, L.L.C.* 277 F. Supp. 2d 600, 604 (D.V.I. 2003) (holding that, in the Virgin Islands, claims of "mental anguish, humiliation and loss of enjoyment of life" do not satisfy the physical harm required to state a claim for negligent infliction of emotional distress), *overruled on other grounds by Miller v. V.I. Housing Auth.*, 2005 WL 1353395 (D.V.I. June 3, 2005); *Seafarers Intern. Union of N. Am. v. Thomas,* 42 F. Supp. 2d 547, 558 (D.V.I. 1999) (holding that, under Virgin Islands law, expert testimony that the plaintiff suffered "anxiety and depression" did not constitute physical harm for

---

[6] There is no evidence in the record showing that Michael Cohler ever sought medical treatment following the accident.

*Cohler v. United States*
Civil No. 2005-29
Memorandum Opinion
Page 12

purposes of a claim for negligent infliction of emotional distress).

    The undisputed evidence shows that Marci Arkin has suffered from "mental anguish, emotional distress, pain and suffering, depression, anxiety, fear for [her] father's life, fear of losing [her] father, loss of enjoyment of life," "great sadness," insomnia, "nightmares, [and] flashback[s]." (United States Interrogs. to Marci Arkin Resp. 14.); (CBI Interrogs. to Marci Arkin Resps. 12 & 14.). It is also undisputed that she has been "diagnosed with Post Traumatic Stress Disorder."[7] (CBI Interrogs. to Marci Arkin Resps. 12-13.). Except for Marci Arkin's post-

---

    [7] Marci Arkin did not present any medical testimony or evidence that she was actually diagnosed with post-traumatic stress disorder. She also failed to provide the name of the doctor who made the diagnosis. In Marci Arkin's response to CBI's interrogatories, she expressed her own opinion as to her condition and asserted her doctor's diagnosis as hearsay. Ordinarily, that evidence would be insufficient to show physical harm for purposes of Marci Arkin's summary judgment motion. *See*, e.g., *Williams v. York Intern. Corp.*, 63 Fed. Appx. 808, 814 (6th Cir. April 3, 2003) (holding that the plaintiff's statement in an affidavit that he was diagnosed with depression and post-traumatic stress disorder was inadmissable hearsay that could not be used to oppose the defendant's motion for summary judgement); *see also Stires v. County of Cape May,* 2001 WL 34609517, *4-5 (3d Cir. Feb. 27, 2001) (holding that plaintiff and other lay witnesses were prohibited from testifying that the plaintiff "suffered an ulcer, aggravation of irritable bowel syndrome, a myocardial infarction, and post-traumatic stress disorder" as physical manifestations of emotional distress). However, because the government has conceded that Marci Arkin had post-traumatic stress disorder, the Court will assume for the purposes of the instant motion that she was actually diagnosed with the disorder.

*Cohler v. United States*
Civil No. 2005-29
Memorandum Opinion
Page 13

traumatic stress disorder, all of her injuries are clearly emotional and therefore non-compensable. *See Ramos*, 277 F. Supp. 2d at 604; *Thomas*, 42 F. Supp. 2d at 558; *see also Mest v. Cabot Corp.*, 449 F.3d 502, 519 (3d Cir. 2006) (holding that "worry, headaches, chest pains, arm numbness, and lack of sleep" did not amount to physical harm for purposes of negligent infliction of emotional distress); *Edmonds v. Beneficial Miss., Inc.*, 212 Fed. Appx. 334, 338 (5th Cir. Jan. 4, 2007) ("[S]leeplessness, nightmares and even multiple visits to a medical doctor were insufficient proof of emotional harm."); *Hamilton v. Baystate Medical Educ.*, 1995 WL 561537 at *6 (1st Cir. Sept. 20, 1995) (finding that allegations of severe stomach pains, frequent headaches, and insomnia failed to prove the requisite physical harm for a negligent infliction of emotional distress claim); *Pacquette v. Nestle USA, Inc.*, 2007 WL 1343794 at *5-6 (W.D. Va. May 7, 2007) (finding that "conclusory allegations that the plaintiff suffered fright and shock . . . fall short of the physical injuries required for a[] [negligent infliction of emotional distress] claim," and that "physical symptoms such as sleeplessness and loss of appetite, these are symptoms of an emotional disturbance, not a physical injury").

On the other hand, whether post-traumatic stress disorder constitutes physical or emotional harm is an issue that requires

*Cohler v. United States*
Civil No. 2005-29
Memorandum Opinion
Page 14

further discussion. The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), sets forth the diagnostic criteria for post-traumatic stress disorder. It states that

> [t]he traumatic event is persistently re-experienced in at least one of the following ways:
>
> . . .
>
> 4. intense psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event.
>
> 5. physiologic reactivity upon exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event.

American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 467 (4th ed. 2000). A diagnosis of the disorder may encompass "a variety of autonomic, dysphoric or cognitive symptoms." *Abdulghani v. V.I. Seaplane Shuttle, Inc.*, 746 F. Supp. 583, 587 (D.V.I. 1990); *see also Brunell v. Wildwood Crest Police Dept.*, 176 N.J. 225, 239-40 (2003) (explaining that "[post-traumatic stress disorder] is a catchall phrase for an array of reactions to stress that can arise in various [] settings"). Because the symptoms of post-traumatic stress disorder may be emotional or physical, a plaintiff's diagnosis of post-traumatic stress disorder, without more, is not determinative of whether the plaintiff has shown physical harm. Rather than focusing on the label of the diagnosis, it is more

appropriate to analyze the nature of the symptoms of post-traumatic stress disorder experienced by each plaintiff on a case-by-case basis.

In this case, there is nothing in the record to show that Marci Arkin has ever experienced any physical symptoms or manifestations of bodily harm in connection with her post-traumatic stress disorder. Therefore, Marci Arkin has failed to show that she experienced any physical injury, as required to support a claim for negligent infliction of emotional distress. *See, e.g., Wilson v. Sears Roebuck and Co.,* 757 F.2d 948, 950-53 (8th Cir. 1985) (holding that the only condition of the plaintiff manifesting itself and shown to be related to the defendant's negligence was post-traumatic stress disorder, which was not the type of physical injury that could support recovery); *Cherney v. City of Burnsville,* 2008 WL 108964, *10-11 (D. Minn. Jan. 8, 2008) (holding that evidence that the plaintiff was diagnosed with and medicated for post-traumatic stress disorder, and was medicated for insomnia, failed to prove physical injury sufficient to sustain the plaintiff's claim for negligent infliction of emotional distress); *Michalezewski v. CSX Transp., Inc.*, 2007 WL 2875627 at *7-8 (N.D. Ill. Sept. 30, 2007) (explaining that a diagnosis of post-traumatic distress accompanied by "sleeplessness, discomfort, fear, and regret are

exactly the sorts of intermediate effects that consistently fail to meet the high bar of [negligent infliction of emotional distress] impact"); *Myseros v. Sissler,* 387 S.E.2d 463, 465 (Va. 1990) (holding that post-traumatic stress disorder, anxiety disorder, nausea, difficulty sleeping and breathing, and loss of appetite and weight, are manifestations of an underlying emotional disturbance, not of a physical injury).[8]

---

[8] *Cf. Bloom v. Consolidated Rail Corp.,* 41 F.3d 911, 915 n.5 (3d Cir. 1994) (noting, in *dicta*, that "[the plaintiff] did demonstrate physical manifestation [of emotional distress] through weight loss, loss of sleep, nightmares, vomiting, and diagnosed post-traumatic stress disorder); *Maldonado v. National Acme Co.,* 73 F.3d 642 (6th Cir. 1996) (concluding that evidence that the plaintiff suffered from asthma, high blood pressure, heart problems, and paranoia related to his post-traumatic stress disorder, and felt jittery, anxious, irritable, depressed, and fearful of death, created an issue of material fact as to whether the plaintiff suffered objective physical injury as result of his initial emotional distress); *Marchica v. Long Island R. Co.,* 31 F.3d 1197, 1203-04 (2d Cir. 1994) (holding that, for purposes of his negligent infliction of emotional distress claim, "[the plaintiff's] emotional distress manifested itself physically in posttraumatic stress disorder, accompanied by sleeplessness, weight loss, vomiting, rashes, and anxiety"); *Botek v. Mine Safety Appliance Corp.*, 611 A.2d 1174, 1176-77 (Pa. 1992) (holding that the plaintiff could recover for his psychological and emotional injuries, including his posttraumatic stress disorder, where such psychological and emotional injuries were accompanied by nausea and headaches, two "objective, measurable, observable physical injuries"). *But see DeJesus v. United States Dept. of Veterans' Affairs,* 384 F. Supp. 2d 780, 801 (E.D. Pa. 2005) (finding that, under Pennsylvania law, stress, anxiety, depression, and post-traumatic stress disorder constituted the requisite physical manifestations for purposes of a negligent infliction of emotional distress claim); *Green v. Bryant*, 887 F. Supp. 798, 801-02 (E.D. Pa. 1995) (noting in *dicta* that, under Pennsylvania law for negligent infliction of emotional distress, claims of migraine headaches and post-traumatic stress disorder were sufficient to allege physical effects of emotional distress).

*Cohler v. United States*
Civil No. 2005-29
Memorandum Opinion
Page 17

## IV. <u>CONCLUSION</u>

Because there are no material facts in dispute and the government is entitled to judgment as a matter of law with respect to the claims of Barbara Cohler, Sherri Anapolle, Bonnie Steiner, Michael Cohler, and Marci Arkin for negligent infliction of emotional distress, the Court will grant the government's motion for summary judgment.  An appropriate Order follows.


S\_____
           **Curtis V. Gómez**
           **Chief Judge**

**FOR PUBLICATION**

```
        IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
            DIVISION OF ST. THOMAS AND ST. JOHN
```

| | |
|---|---|
| NORMAN COHLER, BARBARA COHLER, MICHAEL COHLER, SHERRI ANAPOLLE BONNIE STEINER, and MARCI ARKIN,<br><br>   Plaintiffs,<br><br>   v.<br><br>UNITED STATES OF AMERICA, through the NATIONAL PARK SERVICES, and PARADISE AQUA TOURS, INC.,<br><br>   Defendants. | Civil No. 2005-29 |

**ATTORNEYS:**

**K. Glenda Cameron, Esq.**
St. Croix, U.S.V.I.
  *For the plaintiffs,*

**Joycelyn Hewlett, A.U.S.A.**
St. Thomas, U.S.V.I.
  *For the defendant United States of America.*

**Joshua Evan Tate, Esq.**
St. Croix, U.S.V.I.
  *For Paradise Aqua Tours, Inc.*

<u>**ORDER**</u>

**GÓMEZ, C.J.**

  Before the Court is the motion of defendant United States of America ("the government") for summary judgment against plaintiffs Barbara Cohler, Michael Cohler, Sherri Anapolle, Bonnie Steiner, and Marci Arkin. For the reasons stated in the accompanying Memorandum Opinion of even date, it is hereby

*Cohler et. al. v. United States*
Civil No. 2005-29
Order
Page 2

  **ORDERED** that the summary judgment motion is **GRANTED**; and it is further

  **ORDERED** that the claims of Barbara Cohler, Michael Cohler, Sherri Anapolle, Bonnie Steiner, and Marci Arkin for negligent infliction of emotional distress are **DISMISSED**.

            S\_____
             **Curtis V. Gómez**
              **Chief Judge**